Case number 22-1961, United States of America v. Michael Terry Jr. Argument not to exceed 15 minutes per side. Mr. Blanchard, you may proceed for the appellant. Good morning. Josh Blanchard on behalf of Michael Terry. I'm going to try to reserve four minutes. Fine. I think the question is whether selling drugs at or near one's house always results in the application of the so-called drug house enhancement. At bottom, I think the government's approach says yes, or at least that's the logical extension of their argument. Johnson, well, I mean, to me, Judge Maloney probably could have ruled the other way on I see it as an issue of fact of whether the residence is being used as a drug house in a significant manner. I see that the scoring of the guidelines there is somewhat discretionary with the district court. We review this case under what standard of view, in your opinion? It's interesting. I'm not sure that that's actually settled in this circuit. What standard are you arguing? I think that the application of the law to the facts is de novo. I think the findings of facts are for clear error. Isn't this a finding of fact by Judge Maloney that his residence was being used as a drug house in a significant manner under the guidelines? Isn't that a finding of fact? So Judge Maloney might say I'm slicing the bologna too thinly. He said that to me before. But I think that that's a legal conclusion that's based on ... Sorry. A legal conclusion? I think that it's a drug house is the legal conclusion based on the facts that he found. The facts he found were that a confidential informant did controlled buys at the Terry residence, that Mr. Washington distributed some drugs in the driveway of that residence, and that Mr. Terry was living at the residence. Those were the facts that were found. That's at page ID 2033 in the sentencing opinion. There's about two paragraphs of sentencing opinion on this where he made findings. Those, as best as I can tell, are the only facts he found. I think that it's important. This court in Bell explained that the way we determine whether it's a significant or important reason or rather an incidental or collateral use is we make the determination by comparing the frequency of lawful to unlawful use because we need to figure out if the residence played a significant part in distributing drugs. That finding wasn't ever made. What we do know is that it's a few sales around a gram by Mr. Terry at the residence. The government concedes that at least some of the stuff that Mr. Washington did, Mr. Terry didn't know about and wasn't present for. But it occurred at his residence, right? Don't we focus on the residence rather than the owner's knowledge of what's going on at his residence? If the residence is being used for drug trafficking in a significant manner, does it matter if the owner knows that or not? I think it does, yeah. It does? I don't think the guidelines say that, do they? I think the elements require that it be maintained for that purpose, right? Okay, maintained for the purpose of a drug house, but the owner or the occupant or whoever is in control of the house may not know of all the activity. You're saying he has to know of all the activity that goes on in the drug house? Certainly not. I don't think he has to know about everything that happens, but the stuff that his cousin did, Mr. Washington was Mr. Terry's cousin. The things he did were out in the driveway. Doesn't that count? Isn't that the cartilage of the house? It could, but where I was going with that is for at least some of those, the government observes that my client was at home, and they don't have any evidence that he knew this stuff was going on, but that it was... At his house, and I mean, reasonable inference is that he's got a pretty good idea of what's going on at his house. He's selling drugs and he's got his cousin there doing the same thing. Well, I don't know that there's any record evidence that he knew his cousin was selling drugs in his driveway. His cousin comes over. His cousin does something in the driveway when he's not present, when he's not even at the house. I don't know that you can say that Mr. Terry maintained the residence for the purpose of distributing drugs or that it was a... Can we really say that Judge Maloney's findings of fact are clear error, which is to me, I see the case probably as rising or falling on our standard of review. If we reviewed it de novo, maybe I would agree with you. If I were the district judge, maybe I would not have scored this as a drug house. But since he did, and we're in appellate court and we're reviewing the rulings, and to reverse the district judge, I think we have to give them some deference. So I think there are two issues there, right? One is what the findings were that he actually made, and he concluded that the application applied. I think that's a legal conclusion, and in Bell, the court summarized that we don't know whether it's de novo or clear error, but it didn't matter in Bell, and then the court cited to an unpublished opinion, United States versus Vargas Gutierrez at 464 Fed Appendix 492, acknowledging that we haven't laid out what the correct standard is. So your position then would be that we should be very clear in this case as to what are actual factual findings by the district judge. I think that would... We've identified a couple of factual findings where we should give deference. I think that... I'm sorry. But with respect to the conclusion, the legal conclusion, was this a drug premises that warrants the two-level enhancement? That is the application of law to fact where we would give de novo review, correct? That seems to me to be the best approach and most consistent with the way the court reviews other issues. And so it seems to me that we look at the facts, and clearly Judge Maloney gets deference for his fact finding. I don't think there's any question about that. My issue is the facts that he found, I don't think support it. Because if you look at the findings of fact, they're very light. Can we look at facts that are in the record? If they weren't specifically talked about by the judge? Well certainly Judge Maloney referenced in his opinion the pre-sentence report. I look at the pre-sentence report and I've got this nice chart that they created in paragraph 37 in front of me. And there's all kinds of instances of purchases at the residence, planning to have a purchase at the residence, and distributing of other narcotics by other people at the residence. That doesn't go to whether it's a drug house or not. So I think they're, you know my recollection from the chart is that we've got four sales for Mr. Terry that are in the roughly gram quantity. Some are under, some are like 1.2 grams, you know small deals. But we also need to take into account. One of these things involves 50 grams of heroin. Mr. Porter and Mr. Washington are discussing Porter's planned purchase of heroin before a meeting at Mr. Terry's residence is what it says. Right, they had a phone conversation, those two captured by a wiretap where they talked about drugs and then at his residence. They weren't both at his residence, no. I'm not sure. They referred to drugs that are or would be at his residence. I guess I'm not sure I read it quite that way, but. I'm just reading what it says. Mr. Porter and Mr. Washington discussed Mr. Porter's planned purchase of heroin or fentanyl before a meeting at Mr. Terry's residence. Now it's maybe a little unclear, but you know if you're given some deference to the decision of the district court it certainly suggests that there are substantial amounts there that are being dealt with. But then there's others. I mean it goes on for three pages and that isn't all connected to Mr. Terry, but it's in there repeatedly. It doesn't sound like the case, our precedent where there was one drug deal and it happened at someone's house and so they treated that how, that's like the Whiteside case. That's nothing like that, is it? Well, I don't know. I think it's a lot closer to Whiteside and I think you have to. If you read Whiteside there was a sale. He was prosecuted for the sale and that sale occurred at his house. They tried to make that a drug house without more. Well, and that's a sale. Here there's a lot more. You can say well it's not a whole lot more, but it's a lot more. Well, I think it's three more, but the government concedes. Three more plus it's these indications that there were substantial amounts of drug at the house if you read it, I mean. Mr. Washington who pled guilty in a conspiracy that Mr. Terry was not convicted of did some drug deals, but the government, they concede in the sentencing memo, in their sentencing memo that the record is at least unclear whether Mr. Terry knew about what Mr. Washington was doing. I mean frankly I think that's why we resolved the case the way we did. And there's, I mean could Judge Maloney have held a hearing where he made specific findings and determined that Mr. Terry had knowledge and was maintaining the premises for this purpose and that it was a more significant purpose than using his residence? I mean we could have had a hearing. On a pre-sentencing report, can he or not? He, if, certainly facts that aren't. Not if it says things that aren't in the record, but if it refers to things in the record he can say it's in the. Certainly under Rule 32 if it's not objected to he can adopt it as a finding of fact for sure. So here in PSR would you concede that the PSR chart should be considered or should have been considered by the district court? It, some parts of it certainly could have been considered to make findings for sure. Okay and then to give you a chance to respond to Judge Rogers' questions, what about these various things in the PSR would be your response if the district judge had pointed to them specifically? So the deliveries that were done by Mr. Terry I think obviously is responsible for. The other issues, you know the government says in their brief a lot of times and it's present throughout the PSR that based on officer training and experience they believe something. In other words they had a hunch. They never executed search warrants there. They never did stops after these things happened. My client wasn't there most of the time. The government concedes he didn't know many of these things. And so that stuff happened at his house doesn't mean it was a principal purpose. I mean I think where this goes is the enhancements grown over time. Right in Johnson there was 1,200 pounds of marijuana. In Bell somebody cooked crack cocaine for 22 months in the house and had $4,000 in cash. It was his principal occupation. Here we've got a couple drug sales and a bunch of speculation without findings from the judge that Mr. Terry was aware or knew or was involved. And so for those reasons I think the court should vacate and remand for resentencing. Thank you. Thank you, Your Honor. Good morning. May it please the court. AUSA Lauren Bicksacki for the United States. In this case Judge Maloney did not clearly err when he applied the premises enhancement. Now there's been several questions about the appropriate standard of review. And counsel mentioned the Bell case that discusses the fact that there is case law applying different standards for this exact issue. Now the Bell case was from 2014. And if we look at cases that the appellant cited in his own briefing more recent than that, we see that the Sixth Circuit is applying a clear error standard or a deferential review standard to this exact issue. What case would you rely on for saying that it's a precedential binding case on us, on the standard of review? United States v. Gardner, which is a 2022 case that is a published opinion and it applies a clear error standard.  Does one of the problems in any of the cases is tracing back to what the first case that was published says about the standard of review? I do not know whether the Gardner case recognized that issue. There is the 2020 Eumann case that recognizes the difficulties with respect to standards of review. That case is unpublished. It does state that, quote, it is clear that de novo review should not guide this case and ultimately affords due deference to the district court's application of the guidelines to the facts. There is also the unpublished Hagen case, 2019. And again, I do not know whether there is discussion in that case about the unsettled state of review. Okay, so in terms of the factual findings of the district court, your opponent says it was limited to a few discrete events. Would you agree with that? I do not. If you look at the district court's opinion, ultimately he references six examples of controlled purchases or of narcotic sales at the residence. So his opinion references first the controlled purchases that were made by the CI from the defendant, Terry. And there were two of those, correct? There were four of those. In the space of a year, is that right? In the space of from December 2020 to February of 2021. So there were four controlled purchases by a CI from Mr. Terry himself. And all four of those are contained in the chart that Judge Rogers mentioned on page ID 1792 to 1794. The dates of those are December 9th, 2020, January 21st, 2021, February 18th, 2021, and February 23rd, 2021. And those are all purchases by the CI from Terry at the residence, inside the residence? Correct. And Mr. Blanchard referenced that those, give or take, were roughly one gram. The total for all four of those controlled purchases combined is 3.02 grams. Is that all we can rely on in there? No. It is the government's position that there are seven specific instances of narcotics transactions that Mr. Terry either performed himself or was present for at the residence. But beyond those seven... Did he have to be at present? No. Conceivably, someone could own a drug house and have things going on all day long while he was gone, right? That is correct. So there are seven... That wouldn't add to whether it was a drug house or not? Yes. That additional drug activity would add to whether the enhancement could be applied. And it would add because of the relevant conduct standards contained within the guidelines. So in a conspiracy that is charged or even in a non-conspiracy situation, a person who is actively engaged with others in a legal situation such as drug distribution will be held accountable for everything that was reasonably foreseeable to him. The government argues that these seven are sufficient. But even beyond these seven... When you rely on conspiracy law, it seems to me you import a whole bunch of law with a whole bunch of applications and exceptions. Whereas this is... We're just interpreting the guideline which talks about whether it's a drug house or whatever it is they call it. Yes. Couldn't you just maintain that by... Maybe you've got a house. You say, gee, I've got a house. I'm going to let people do drugs there. And you're generally aware that a lot of drugs are bought and sold there. Wouldn't that be enough? Yes. And the government... Is there a law that says that's enough? So I have law from the Sixth Circuit that says that the relevant conduct standards under 1B1.3A1B apply directly to this enhancement. So that case is United States v. Rich, 14F4, 489, which is a Sixth Circuit 2021 case. And that case was published... As you look at relevant conduct, and what would be the relevant conduct if you just possessed a house, owned a house, and a lot of drug... And arguably, but not explicitly, know that drugs, that it's a drug stash house or whatever you call it. So the government would argue the relevant conduct would be the other drug transactions happening by members of the conspiracy or by co-defendants in this case at the residence itself. Because that is reasonably foreseeable to Mr. Terry. Mainly because he is selling drugs there himself. He is meeting with other members of the conspiracy to receive drugs at the house. And he is present when his cousin, Mr. Washington, has a very large transaction. Are these phone calls where he indicates that drugs can be received at the house? Is he party to those in this chart? Mr. Terry's phone was not surveilled by the government. The phone where a lot of this discussion... So these instances are just evidence that it happened at his house, not that he knew or didn't know. Correct. He was present with co-defendants in this case at the residence when the transactions were occurring. However, we do not have text messages or phone intercepts from Mr. Terry. With respect to the phone calls then, you don't have any evidence that he knew about them or was present when the phone calls were happening. That is correct. We have evidence that he was present with the transactions. Getting back to the language of the enhancement. The commentary, note 17, says that manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises. How is that portion, that it must be one of the defendant's primary or principal uses, satisfied by the evidence in this case? For that, I would point to the controlled purchases for which he did himself, which he arranged with the CI, delivered the drugs, and accepted the money for himself. I would also point to the additional drug activity that happened with him directly. In this case, it's referenced in the PSR, a co-defendant, Ms. Mack, delivered between 5 and 10 grams of drugs to the residence to resupply him for his sales. How do we know that was to him, to resupply him? It was in her proffered statements and contained within the PSR. There was no objection to that portion of the PSR. That is not within the chart. That discussion can be found on page ID 1800 of the PSR. Going on into that comment 17, it says, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance, and how frequently the premises was used by the defendant for lawful purposes. Was that latter considered by the district court? The district court had a two-paragraph explanation, and he did indicate that he viewed it was a primary purpose. It states that, quote, the case law clearly says that a residence can have more than one primary purpose, and the factors that this court already outlined in the court's judgment supply sufficient evidence by a preponderance of the evidence that the drug house enhancement should apply. Was there any consideration of the lawful purposes that the defendant used the house for? There was no explicit finding with respect to the lawful purposes. However, it was discussed at sentencing. It was discussed in the PSR that this was a residence. With respect to frequency, of course, the fact that it is a residence will always trump any unlawful purchases there. If someone is living there 100% of the time, that frequency will necessarily be greater than the frequency of the illegal transactions, because someone can't be having illegal transactions when they sleep, for example. And so the court acknowledged that he was familiar with the case law on this point with respect to the purposes of the house, and found that the four controlled purchases plus the two additional purchases that the defendant was present for, the district court explicitly referenced those six interactions. The government would submit that there is that seventh transaction where Mr. Terry received drugs from co-conspirator Ms. Mack, and then along the lines of Judge Rogers' questions and statements, we have the additional drug activity that occurred with respect to Mr. Washington and other members of the conspiracy at the residence. Counsel, you make the interesting argument at page 16 of your brief, that further the record supports the inference that additional drug activities occurred at the house. And you say, put differently, given the sample of drug activity at the residence and the lack of contrary evidence, the district court could reasonably infer that additional regularly occurring drug activity took place at Terry's residence. You're saying that we're not limited by the evidence in the record, but that if reasonable inferences could be made that there was even more drug activity, that that would be sufficient. That seems kind of logical, but do you have any authority for that proposition? If I may have a moment. So the United States v. Henderson case, which is a Tenth Circuit case, referenced inferences that could be drawn based on what investigators saw. So in that case, they saw multiple people entering and exiting the residence in a manner that was consistent with drug trafficking over a six-month period. And so I suppose it's not directly on point to the scenario discussed in our brief. However, we do see that a district court is able to infer things based on the facts that are presented to them. It seems like the district court should be able to make reasonable inferences based on the evidence as opposed to actually having evidence of, okay, we have documented evidence of seven transactions, but it's reasonable to infer that you argue in your brief there were a lot more that they just weren't there to see. And that is the role of the district court in Did he do that, though, in this case? Did Judge Maloney He did not explicitly state that in his findings. Okay, but could we do that on appeal? We can affirm for any reasons that were argued below that are in the record. We can affirm the right result, wrong reasons, all this. We don't have to reverse as long as it's in the record, it was argued, it was preserved. Is that what we could do here? You could do that. We could invoke reasonable inferences based on the evidence? Yes, you could do that. I don't think that it is necessary to do that under the clear error standard of review. But, okay, if some of us think maybe you don't have enough here, but reasonable inferences would put you over the top, you think we could do that? Yes. Wouldn't that be in conflict with your proposed standard that this is a factual matter where deference should be given to the district judge for us to make inferences that the district judge didn't make? It is the government's position that clear error review should apply. Therefore, we don't think it's necessary for this court to draw inferences. Wouldn't it be in conflict with your position for us to do that? If the court were to decide that clear error review were not appropriate here, in that case the court has then said it will not be giving deference to the district court and such inferences would be appropriate in that case. However, the government does not believe that this court needs to do that to affirm the decision because of the very deferential standard of review owed to the district court. I see I have approximately 40 seconds remaining. Are there any other questions from this court? With that, I will rest and ask that the court apply the clear error standard of review to affirm Judge Maloney's decision that the drug house premises does apply. Thank you. Thank you. To Judge Griffin's question about inferences, I think it's problematic for the court to be giving great deference to fact-finding and then essentially doing additional fact-finding. Seems a little contrary to me. But I think it's also important, and I don't know if it's referenced in the pre-sentence report. I think it's referenced in the criminal complaint, so I believe it's in the record. There was a pull camera on my client's house recording everything. And so if there were additional transactions, this is an interesting case where they could show you the transactions rather than say, well, you should just infer that there were more. What period of time was the camera there? It was a while. I apologize. I don't know. I mean, it's kind of important. I mean, this is, what, an 11-month period that we're talking about here? Yes. I mean, was the camera there, you know, two days, three days, a month? Yes. I apologize. I could certainly supplement with that. I don't remember the date. Okay. But it's in the record? I believe it's in the criminal complaint. It's referenced, the pull cam observations. I don't know if the extent of that is referenced there. Okay. Well, if the extent isn't referenced, it's kind of hard for you to rely on it then, I think. Correct. I'm just saying that there's a reference that there was a pull cam. Yeah. I mean, we don't know. If it's only there for a couple of days, it doesn't mean much. Okay. Sure. On, Judge Moore, your question about the primary or principal use, Judge Maloney, he acknowledged that there could be more than one primary use. No question about that. He says he understands the law on that. But then we don't go to the next step of making findings about whether, you know, whether it was primarily used for drugs or primarily used for residence and comparing the lawful and unlawful uses, Note 17 suggests. That's also, it seems like the commentary doesn't apply English in the way English should be applied because it says there could be multiple primary uses. I mean, primary usually means the principal use, but here it says it's got to be one or more, or one of the principal and one of the primary uses, which to me it just, that's not what primary means. I can appreciate the awkwardness of that. It's very awkward, yeah. I think the court embraced that, though, in Bell, that you can have more than one primary use. Okay. So, all right. He has a primary use for the residence as a sleeping quarter and just a regular house, but he also has a primary use as a drug house. And it doesn't have to be one or the other. It can be both. I think that's the court's case law, yes. As long as there's a substantial connection activity with the distribution of drugs that occurs at the house. In the commentary and this court's case law, I think Bell says that to figure that out, we compare the unlawful and the lawful use. And, I mean, I think what the record here establishes is we got four sales from the house. And he's living there, and I think it's important because when you contrast the facts of this case to Bell, we know other things, right? We know that Mr. Terry has a job and works elsewhere. That's usually not present in these drug house cases. It wasn't present in Bell, for example. We know the government admits that the scope of the other stuff may not have been known to Mr. Terry. We know that a co-defendant proffered, because the PSR writer says that this is a stash house. Now, I assume that means a place where drugs are stashed, but we also know that one of the government's cooperating witnesses testified that Mr. Terry wasn't someone who was trusted with quantities of drugs. He would get, you know, five or ten grams because he was, quote, bad with money. They never found any tools of the trade, which we normally find at a drug house. And the government's point that not finding tools isn't dispositive is well taken, but it's some, I mean, that's missing here. All we have are a couple drug sales, and I think we end up landing at a place where everyone who has a place they put their head down at night and sells drugs gets a drug premises enhancement. And I don't think that's what it's meant for. I don't think you are, because I think that it is somewhat discretionary with the district judge. And if he has discretion to find it a drug house, he probably also has discretion to find it not a drug house. So I don't think every case is going to be the same, that's all. I guess I'd push back a little bit and say that I think the judge has to find facts, you know, based on what exists. It's not a discretionary call whether the facts exist. Sure. Thank you. Thank you both for your argument. And Mr. Blanchard, I see you're appointed pursuant to the Criminal Justice Act, and we want to thank you for your representation of your client in the interest of justice. Thank you. And the case will be submitted.